UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

STEPHANIE COOK,

        Plaintiff,

   v.                                                         Case No. 22-C-396

GREENWOOD HOSPITALITY MANAGEMENT, LLC,

        Defendant.

___

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

___

On March 30, 2022, Plaintiff Stephanie Cook brought this action against Greenwood Hospitality Management, LLC, alleging misclassification as an exempt employee and entitlement to overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Wisconsin's Wage Payment and Collection Laws (WWPCL), for compensable work she performed while employed as an Executive Housekeeper by Greenwood. The court has jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. This matter is before the court on Ms. Cook's motion for partial summary judgment and Defendant's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Greenwood asserts that Ms. Cook is exempt from the overtime requirements of federal and state law because she is a bona fide executive. For the following reasons, Greenwood's motion for summary judgment will be granted, Ms. Cook's motion will be denied, and the case will be dismissed.

## BACKGROUND

Greenwood is a hospitality management company that operates hotels across the country. Def.'s Proposed Findings of Fact (DPFOF) ¶ 31, Dkt. No. 33. Greenwood hired Ms. Cook as an

hourly-paid Inspector on September 9, 2019. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 15, Dkt. No. 28. Shortly thereafter, Ms. Cook was promoted to Executive Housekeeper in October of 2019. *Id.* As an Executive Housekeeper, Ms. Cook worked more than forty hours per workweek. Def.'s Additional Proposed Findings of Fact (DAPFOF) ¶ 20, Dkt. No. 31. Greenwood compensated Ms. Cook with a salary that exceeded $684.00 per week, except for a brief period from May 4, 2020, through May 30, 2020. *Id.* ¶ 24. During that period, Greenwood compensated Ms. Cook on an hourly basis due to the COVID-19 pandemic. *Id.* ¶ 25. As the demand for business and staff resumed, Ms. Cook was placed back to full-time salary on May 31, 2020. *Id.* ¶ 26. Otherwise, Ms. Cook never suffered a deduction of her pay. *Id.* ¶ 28. Ms. Cook's salary was subject to potential deductions for attendance violations and disciplinary infractions. PPFOF ¶ 25. Ms. Cook was disciplined in March of 2022 for an incident that merited a potential reduction of her salary. *Id.* ¶ 26. Still, Ms. Cook was not disciplined with a pay deduction. DAPFOF ¶ 28.

In addition to Ms. Cook's role as Executive Housekeeper, the Housekeeping Department was composed of an Assistant Housekeeping Manager, an Inspector, room attendants, a lobby attendant, and housemen. Pl.'s Proposed Findings of Fact in Opp. to Def.'s Mot. for Summ. J. (PPFOFIO) ¶ 1, Dkt. No. 38. Employees in the Housekeeping Department reported to Ms. Cook, and she had the authority to discipline and terminate them. DAPFOF ¶¶ 2, 15. Most of Ms. Cook's workday was spent inspecting rooms, checking on the work of other employees to ensure they were up to satisfaction, and either directly fixing or directing a room attendant to make any necessary corrections when they were not. PPFOFIO ¶¶ 17–18. If the Housekeeping Department was understaffed, Ms. Cook could step in and take over the function of a room attendant or a housekeeper that she supervised. *Id.* ¶ 31. This was all part of Ms. Cook's supervisory role within the Housekeeping Department. *Id.* ¶¶ 18, 31. Additionally, Ms. Cook created weekly work schedules for staff in the Housekeeping Department, subject to review and approval from the

hotel's General Manager. *Id.* ¶¶ 26–28. Ms. Cook frequently handled many of her managerial tasks like making schedules, approving housekeeping staff's hours for payroll, and ordering supplies, after regular work hours. *Id.* ¶ 34; Cook Supp. Decl., ¶ 10, Dkt. No. 40.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: a court construes facts and inferences arising from them in favor of the party against whom the motion under consideration is made. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). When cross-motions for summary judgment are filed, "[i]n effect the judge is asked to decide the case as if there had been a bench trial in which the evidence was the depositions and other materials gathered in pretrial discovery." *Cook Inc. v. Boston Scientific Corp.*, 333 F.3d 737, 741 (7th Cir. 2003). "The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## ANALYSIS

Under the FLSA, employers must compensate an employee who works more than forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). That requirement cannot be waived or bargained away by employees. *See Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 706 (1945). Certain classes of

3

employees are exempt from the overtime requirement, including employees "employed in a bona fide executive capacity." 29 C.F.R. § 541.100. The "time and a half" compensation requirement does not apply to "any employee in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

Greenwood asserts that the executive exemption applies to Ms. Cook. An employer bears the burden of establishing that the employee is properly classified under the exemption by showing that (1) the plaintiff is paid on a salary basis of at least $684 per week, (2) the plaintiff's primary duty consists of management of the employer's enterprise or a customarily recognized department or subdivision thereof, (3) the plaintiff customarily and regularly directs the work of two or more other employees, and (4) the plaintiff has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100; *see also Shaw v. Prentice Hall Comput. Publ'g*, 151 F.3d 640, 642 (7th Cir. 1998).

Similarly, under Wisconsin law, an employer must pay overtime compensation to all nonexempt employees. Wis. Admin. Code § DWD 274.03. Exemptions to the overtime payment rule, including the executive exemption, are detailed in Wis. Admin. Code § DWD 274.04. "[T]hese exemptions shall be interpreted in such a manner as to be consistent with the Federal Fair Labor Standards Act and the Code of Federal Regulations as amended." Wis. Admin. Code § DWD 274.04; *see also Burlaka v. Contract Transp. Servs. LLC*, 971 F.3d 718, 719 n.1 (7th Cir. 2020) (focusing on FLSA claims when plaintiff also asserted claims under Wisconsin law because the same analysis applies to both). Thus, while the court will focus on Ms. Cook's FLSA misclassification claim, the court's conclusions will apply equally to her state law claim.

Ms. Cook does not dispute that she meets the third and fourth elements of the executive exemption test. Pl.'s Reply in Supp. of Part. Summ. J. & Resp. to Def.'s Cross-Mot. for Summ. J.

4

Case 1:22-cv-00396-WCG   Filed 12/01/23   Page 4 of 9   Document 44

at 7 n.5, Dkt. No. 37. She admits to customarily and regularly directing the work of two or more other employees and having the authority to discipline and terminate them. *Id.* Thus, she meets the third and fourth elements of the executive exemption and relies solely on the "salary" and "primary duty" elements to argue that she was misclassified as an exempt employee.

A. **Salary Element**

"To qualify as an exempt executive . . . employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $684 per week," 29 C.F.R. § 541.600, "which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 5414.602. It is undisputed that Ms. Cook's salary exceeded $684 per week. Whether Greenwood can show that it paid Ms. Cook on a salary basis depends on whether, under her employment agreement, she "regularly receive[d] each pay period . . . a predetermined amount constituting all or part of [her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). "If an employer docks an employee's pay for partial day absences, violations of rules other than those of safety, or based on the quantity or quality of the employee's work, the employee is not considered to be on a salary basis." *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 534 (7th Cir. 1999), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013); *see also Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 370 (7th Cir. 2005). Even if the employee's salary is not actually reduced, she may nevertheless lose exempt status if an employment policy creates a "significant likelihood" of such deductions. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Ms. Cook contends that she is not an exempt, salaried employee because under Greenwood's disciplinary policy she was subject to an impermissible reduction in pay. Although she concedes Greenwood did not actually deduct compensation for disciplinary reasons, Ms. Cook

5

contends that Greenwood "reserved the right to do so and it was more than a 'mere possibility' that it would do so." Pl.'s Br. in Supp. of Mot. for Partial Summ. J. at 15, Dkt. 27 at 15. In support of this contention, Ms. Cook cites Greenwood's Employee Handbook, which expressly lists potential discipline, including suspension without pay, to address unsatisfactory conduct in the workplace. Esp Decl., Ex. 5, Employee Handbook, Dkt. No. 30-6 at 56–57.

What Ms. Cook fails to recognize, however, is that some deductions in pay are permissible even for salaried employees for certain reasons. *See* 29 C.F.R. § 541.602(b). The exceptions to the prohibition of reductions in exempt employees' salary authorized by the regulation mirror those allowed in Greenwood's Employee Handbook. Compare 29 C.F.R. § 541.602(b), with Esp Decl., Ex. 5, Employee Handbook, Dkt. No. 30-6 at 21–22. In other words, Greenwood allows deductions from salary only under the conditions in which deductions are allowed under the regulation. Because the deductions allowed in Greenwood's Employee Handbook are expressly allowed under the Department of Labor regulation, it cannot be seriously argued that Greenwood's policy does not comply with the salary test for exempt employees. Thus, the possibility of salary deductions as authorized by the Employee Handbook does not disqualify Ms. Cook as an exempt employee and Greenwood has shown that Ms. Cook meets the "salary" element.

### B. Primary Duty Element

Under the "primary duty" element, it is undisputed that Ms. Cook performed managerial tasks for Greenwood's Housekeeping Department. PPFOFIO ¶ 34; Pl.'s Br. in Supp. of Mot. for Partial Summ. J. at 11. Further, Ms. Cook does not dispute that the Housekeeping Department constitutes a "customarily recognized department" of Greenwood, for purposes of the executive exemption. Pl.'s Reply in Supp. of Part. Summ. J. & Resp. to Def.'s Cross-Mot. for Summ. J. at 7 n.5. The dispute centers on whether those tasks constituted Ms. Cook's "primary duty" as Executive Housekeeper. "The term 'primary duty' means the principal, main, major or most

6

Case 1:22-cv-00396-WCG    Filed 12/01/23    Page 6 of 9    Document 44

important duty that the employee performs." 29 C.F.R. § 541.700(a). As set forth by applicable regulations, courts consider factors such as "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* Not all factors, however, are given equal weight. The Seventh Circuit declined to adopt the "majority-time" approach, reasoning that an "employee's primary duty is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time." *Demos v. City. of Indianapolis*, 302 F.3d 698, 705 (7th Cir. 2002) (internal citations omitted).

Here, Ms. Cook's primary duty was managerial. To the contrary, she argues that most of her time was spent performing nonexempt duties. The fact that Ms. Cook "concurrently performed nonmanagerial work," however, "does not disqualify [her] from exempt status." *Millikan v. Town of Ingalls*, No. 21-1859, 2022 WL 3928516, at *2 (7th Cir. Aug. 31, 2022). In *Millikan*, the court held that a Town Manager was an exempt executive, despite the fact that he often performed manual labor for the street department, "because even when he performed street work, he was responsible for the success or failure of [the Town's] operations." *Id.* (internal quotation marks omitted). Likewise, while Ms. Cook performed concurrent physical tasks like checking on other employees' work and fixing and directing others to fix rooms, she was responsible for the success of the Housekeeping Department because she supervised and ensured that the work of housekeeping staff was up to standard. Again, it is undisputed that employees in the department reported to her and that she had the authority to discipline and terminate them. Nor does the fact that she allegedly spent up to ninety percent of her time performing those physical tasks make a difference in the analysis. *See Baldwin v. Trailer Inn, Inc.*, 266 F.3d 1104, 1114 (9th Cir. 2001)

7

(declining to presume that the executive exemption failed when employees spent ninety percent of their time on nonexempt tasks "where, as here, managerial duties are packaged in employment with non-managerial tasks, and the management function cannot readily and economically be separated from the nonexempt tasks"); *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 515–16 (4th Cir. 2011) (holding that plaintiff was exempt even if she spent 99% of her time on nonexempt duties because she concurrently supervised the store).

Ms. Cook argues that room inspection, which made up a significant portion of her daily tasks, is the primary function of the department's inspectors, who are nonexempt employees, and therefore Ms. Cook's nonexempt duties are relatively more important. Pl.'s Reply in Supp. of Part. Summ. J. & Resp. to Def.'s Cross-Mot. for Summ. J. at 15. But unlike nonexempt employees, Ms. Cook performed the inspection of rooms as part of her supervisory role, checking on the work of other employees in the department and directing them to make appropriate corrections. PPFOFIO ¶¶ 17–18, 31. While it is undisputed that Ms. Cook could step in for one of the employees that she supervised, nothing in the record suggests that her managerial duties could be performed by anyone else in the department. *See Brown v. Aleris Specification Alloys, Inc.*, No. 3:14-cv-41, 206 WL 1183207, at *5 (N.D. Ind. Mar. 28, 2016) (finding the managerial work of a plaintiff more important than his concurrent manual work because he was the sole supervisor of a production line and, therefore, he "could stand in for a missing worker on the line, but they could not stand in for him"). Thus, recognizing that she had concurrent duties, her managerial duties were relatively more important than her nonexempt duties because, as Executive Housekeeper, only she was charged with those managerial duties.

To the extent that Ms. Cook's duties included concurrent nonexempt tasks, neither party offers evidence that shows how Ms. Cook's salary fared with the wages of other nonexempt employees that did the same kind of work. Thus, that factor does not weigh in either party's favor.

8

Finally, Ms. Cook had relative freedom from direct supervision. To be free from direct supervision is to exercise discretion and independent judgment. *See* 29 C.F.R. § 541.202(c). "[E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id.* Thus, even if some of Ms. Cook's managerial tasks were subject to the General Manager's review and approval, she was relatively free from direct supervision. Like the plaintiff in *Brown*, she "was not supervised as closely as [her] crew was" because she checked on the work of staff, with authority to discipline and terminate them. 2016 WL 1183207, at *5. Accordingly, as a matter of law, Ms. Cook's primary duty consisted of managing the Housekeeping Department and she was properly classified as an exempt executive.

## CONCLUSION

For the foregoing reasons, Ms. Cook's motion for partial summary judgment (Dkt. No. 26) is **DENIED** and Greenwood's cross-motion for summary judgment (Dkt. No. 34) is **GRANTED**. The case is **DISMISSED** with prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 1st day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge